# IN RE WEISS.

PATENTS; INVENTION; ANTICIPATION; ANALOGOUS OR CORRELATED ARTS.

1. Means for flatly fastening an initial upon a finger-ring, consisting of a stud on the initial having square shoulders, engaging shoulders in a hole made in the ring, *held*, reversing a decision of the Commissioner of Patents, not anticipated by a construction in which the stud on the initial is provided with a rounded spring-head which does not engage the ring proper, but after extending through an onyx-setting engages a box attached to the ring.

2. Where the invention relates to finger-rings, the expedient of forming shoulders within holes in the band, with which shoulders on the stud engage, would not be suggested to one skilled in the art by a similar construction in street signs, in which latter construction, also, is used, by preference, a flanged thimble for the fastening device, and the latter invention, therefore, is not an anticipation of the former.    Street-signs and finger-rings are not analogous or correlated arts.

No. 206.  Patent Appeals.  Submitted January 14, 1903.  Decided February 3, 1903.

HEARING on an appeal from a decision of the Commissioner of Patents, rejecting an application for a patent for an alleged improvement in finger rings.          *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. James A. Carr* and *Mr. Hervey S. Knight* for the appellant.

*Mr. J. M. Coit* for the Commissioner of Patents.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents rejecting the application of the appellant, Max L. Weiss, for a patent for an alleged improvement in finger-

rings. The improvement is described in seven several claims as follows:

" 1. An article of jewelry comprising a base-piece having one or more holes extending directly therethrough and a shoulder in each hole, and a top piece mounted flatwise on said base-piece, said top piece having tapering-headed studs arranged to co-operate with said shoulders respectively, substantially as described.

" 2. An article of jewelry comprising a base-piece having one or more holes therein and a shoulder in each hole, and a top piece mounted flatwise directly against said base-piece having resilient headed studs arranged to co-operate with said shoulders respectively, substantially as described.

" 3. An article of jewelry comprising a base-piece having holes therein and a shoulder in each hole, and a top piece mounted flatwise directly against said base-piece having studs provided with enlarged tapering heads arranged to co-operate with said shoulders respectively, and slotted endwise to make the parts thereof resilient, substantially as described.

" 4. A ring consisting of a band having holes therein and shoulders in said holes, and a top mounted directly upon the band, and having studs thereon adapted to co-operate with said holes, substantially as described.

" 5. A ring comprising a band having holes therein and a shoulder in each hole, and a top mounted directly upon the band and having resilient studs adapted to co-operate with said shoulders respectively, substantially as described.

" 6. A ring comprising a band having holes therein and shoulders in said holes, and a top mounted directly upon the band, and having endwise-slotted studs provided with tapering heads, adapted to co-operate with said shoulders respectively, substantially as described.

" 7. A ring comprising a band having holes therein and shoulders in said holes, and a plurality of tops each arranged to be mounted directly upon the band, and having endwise-slotted studs provided with tapering heads adapted to co-operate with said shoulders respectively, substantially as described.

The primary examiner describes the construction in less technical language as follows:

" The structure upon which these claims are drawn is a specific form of fastening employed in attaching " initials, emblems and other designs ' to ' finger-rings and other articles of jewelry.' The ring has two or more holes each of which extends therethrough and is provided with an annular shoulder about midway of its depth. The initial, or other emblem, is provided with two or more studs or pins each of which terminates in an enlarged head, tapered so as to permit its ready insertion into its appropriate hole in the ring. Each of these studs is split and the stud back of the head is cut away to form a shoulder. The split in the stud permits it to be sprung into place, and the shoulder on the stud cooperates with the shoulder in the opening in the ring and prevents the withdrawal of the stud, and hence the removal of the initial without the special tool shown in Figure 6."

To this device the merit of patentable novelty was denied by each and all the tribunals of the Patent Office on the ground that it had been anticipated by a patent No. 467,928, for an improvement in finger-rings, issued to one Joseph H. Fink under date of February 2, 1892, and by a patent No. 528,196, for an improvement in signs, issued to one Clinton F. Webster under date of October 30, 1894; and thereupon the Commissioner of Patents refused to grant a patent for the alleged invention. From such refusal the applicant has appealed to this court.

Notwithstanding the concurrent decisions of the tribunals of the Patent Office, it seems to us that the appellant's device is not without merit, and that he is entitled to a patent for it. The patent to Fink is no anticipation of it. The only thing common to the two is that both relate to finger-rings, and both have for their purpose the attachment of initials to such finger-rings. Fink's device is a combination of a box, convex shells, a perforated onyx, and an initial, all of which which are necessary elements in the combination, according to his claim. The appellant omits the box and the onyx, and retains merely

the convex shell or principal plate of the ring and the initial; and the method of attachment and detachment is different. This is sufficiently shown when it is stated that the initial may be removed from the onyx in Fink's method by inserting the blade of a knife between the two; while in the appellant's device a key is required. This result is due to the fact that in the former a bulged spring-head is used, and in the latter a square shoulder. We cannot hold that the substitution of a square shoulder for a rounded end of the stud is a mere mechanical expedient obvious to any skilled workman. It does not seem to have been obvious even to Fink, who was an inventor.

But it is argued that the expedient of the formation of shoulders within the holes in the band, which is the main element of the appellant's fastening device, is clearly suggested in the patent to Webster for securing letters to street-signs. Webster's patent is not in an analogous or correlated art; and we do not see that it would naturally have suggested the device of the appellant. A large wooden sign would not naturally be taken as a model for the construction of a delicate finger-ring. Webster uses by preference a flanged thimble for his fastening device; the appellant describes a shoulder in a finger-ring. A shoulder in a finger-ring is scarcely the equivalent of a flanged thimble, and would not be suggested by it. And if the flanged thimble be discarded, and Webster's other expedient is used of extending the stud entirely through the band of the ring, the article of the issue is not produced.

We think that the decision of the Commissioner was erroneous and should be reversed; and that the appellant is entitled to a patent for his invention.

The clerk of the court will certify this opinion and the proceedings of the court in the premises to the Commissioner of Patents according to law.                    *Reversed.*

Mr. Justice GOULD, of the Supreme Court of the District of Columbia, sat with the hearing and determination of this case, in the place of Chief Justice ALVEY.